**5**

PROBER & RAPHAEL, A LAW CORPORATION
LEE S. RAPHAEL, ESQ., #180030
DIANA TORRES-BRITO, ESQ. #163193
NOEMI PADILLA, ESQ. #343367
P.O. Box 4365
Woodland Hills, California 91365-4365
(818) 227-0100
(818) 227-0101 facsimile
Attorneys for Movant
CIG FINANCIAL
C.283-020

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re

LARRY DALE BUTLER, JR.,

                    Debtor.

_____/

Bk. No. 23-21005

DCN: PPR-1

CHAPTER 7

Hearing-
Date: June 8, 2023
Time: 10:00 A.M.
Place:  U.S. Bankruptcy Court
501 I Street, Suite 3-200
Sacramento, CA 95814
Dept. E, Courtroom 33
Judge: Hon. Ronald H. Sargis

EXHIBITS A - C
IN SUPPORT OF MOVANT NASA FEDERAL CREDIT UNION'S
MOTION FOR RELIEF FROM AUTOMATIC STAY

Exhibit A – Contract – Pages 2-3
Exhibit B – Title – Page 4
Exhibit C - NADA - Page 5

Exhibits in Support

# SIMPLE INTEREST MOTOR VEHICLE CONTRACT AND SECURITY AGREEMENT WITH ARBITRATION CLAUSE

Contract Number: _____

| Buyer's Name, Address and Phone Number: | Co-Buyer's Name, Address and Phone Number: | Seller/Creditor's Name, Address and Phone Number: |
|---|---|---|
| LARRY D BUTLER JR.<br>6159 SUN TREE LN<br>FAIR OAKS CA 95628 | | SACRAMENTO LUXURY MOTORS<br>7801 FAIR OAKS BLVD<br>CARMICHAEL CA, 95608 |

| NEW/USED | YEAR | MAKE / MODEL | ODOMETER READING | VEHICLE IDENTIFICATION NUMBER | COLOR |
|---|---|---|---|---|---|
| USED | 2017 MERCEDES-BEGLE | | 48349 | 4JGDA5HB5HA576701 | BLACK |

PRIMARY VEHICLE USE: ☒ Personal, Family or Household    ☐ Commercial or Agriculture

The words "our," "we" and "us" refer to the creditor/seller in this contract, or upon any assignment, its assignee. The words "you" and "your" refer to the buyer and co-buyer, if any, named in this contract. We sell you the motor vehicle described above on credit. The credit price is the "Total Sale Price" shown below. The "Cash Price" is also shown below. By signing this contract, you agree to buy the vehicle on credit and pay for it in accordance with the terms, agreements and schedules shown on the front and back of this contract. The finance charge will be figured on a daily basis. If this contract is signed by a buyer and co-buyer, each is together and individually responsible for all agreements in this contract.
SEE OTHER SIDE FOR ADDITIONAL TERMS AND AGREEMENTS.

## A. FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit including your downpayment of<br>$ 4000.00 |
|---|---|---|---|---|
| 17.490 % | $ 18779.80 | $ 30229.16 | $ 49008.96 | $ 53008.96 |

## B. YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| One Payment of | N/A | |
| 71 Payments of | 680.68 | Monthly, beginning 12/27/20 |
| | | |
| One Final Payment of | 680.68 | 11/27/26 |

**SECURITY:** You are giving a security interest in the goods or property being purchased. **LATE CHARGES:** If any payment is more than 10 days late you may be charged 5% of the late amount and no more than $10. **PREPAYMENT:** If you pay your contract in full before its maturity, you may be entitled to a minimum finance charge. See the back of this contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest. **★ MEANS AN ESTIMATE**

## ITEMIZATION OF AMOUNT FINANCED - Seller may keep a portion of these amounts.

1. Total Cash Price
   A. Cash Price Motor Vehicle and Accessories $ 30780.00
      1. Cash Price Vehicle .............. $ 30780.00
      2. Cash Price Accessories ......... $ N/A
      3. Other ............................ $ N/A
   B. Document Processing Charge ....... $ 85.00 (b) (not a governmental fee)
   C. Emissions Testing Charge ......... $ 50.00 (b) (not a governmental fee)
   D. (Optional) Theft Deterrent Device(s) (To whom paid)
      N/A ................. $ N/A (b)
      N/A ................. $ N/A (b)
      N/A ................. $ N/A (b)
   E. (Optional) Surface Protection Product(s) (To whom paid)
      N/A ................. $ N/A (b)
      N/A ................. $ N/A (b)
      N/A ................. $ N/A (b)
   F. EV Charging Station ............... $ N/A (b)
      To Whom Paid
   G. Sales Tax (on taxable items) ..... $ 2395.90 (b)
   H. Electronic Vehicle Registration or transfer charge $ N/A (b) (not a governmental fee)
      To Whom Paid
   I. (Optional) Service Contract (To whom paid)
      _____ ......... $ N/A (b)
      _____ ......... $ N/A (b)
      _____ ......... $ N/A (b)
   J. Prior Credit or Lease Balance a) (paid by Seller to)
      (See down payment and trade-in calculation)
   K. (Optional) Debt Cancellation Agreement (GAP) $ N/A (b)
      To Whom Paid
   L. Used Vehicle Contract Cancellation
      Option Agreement ................. $ N/A (b)
      To Whom Paid
   M. Other (For) ....................... $ N/A (b)
   Total Cash Price (A through M) ...... $ 33310.90

2. Amounts Paid to Public Officials
   A. License Fees .... Estimate ....... $ 895.00 (b)
   B. Registration/Transfer/Titling Fees $ 15.00 (b)
   C. California Tire Fees .............. $ N/A (b)
   D. Other ............................. $ N/A (b)
   Total Official Fees (A through D) ... $ 910.00

3. Amounts Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a+b) $ N/A
   d. State Emissions Certification fee a $ 8.25 (b)
   e. State Emissions Exemption fee ..... $ N/A (b)
   Subtotal (1 through 4) .............. $ 34229.16

4. Total Down Payment
   A. Trade-in Value ................... $ 14520.00 (b)
      Yr 2018 Make HYUNDAI    Make ELANTRA
      34300    V.I.N. KMHD84LF0JU55364
   B. Less Prior Credit or Lease Balance (c) $ 14520.00 (b) (indicate a negative number)
   C. Net Trade-in (A less B) .......... $ 0 (b)
   D. Deferred Down Payment ............ $ N/A (b)
   E. Manufacturer's Rebate ............ $ N/A (b)
   F. Other ............................ $ N/A (b)
   G. Remaining Cash Down Payment ...... $ 4000.00 (b)
   Total Down Payment (A through G) .... $ 4000.00 (b)
   (If negative, enter zero on line 4 and enter the amount less than zero as a positive number on line 1J above)

7. Amount Financed (6 less 8) .......... $ 30229.16 (b)

TITLE TRANSFER FEES (Not Financed): The Buyer will pay the estimated fee(s) of $ to the appropriate public authority in order to transfer registration after payment in full.

OPTION: ☐ You pay no Finance Charge if the Amount Financed, item 7, is paid in full on or before _____ 20 ___ Year    SELLER'S INITIALS _____

OPTIONAL DEBT CANCELLATION AGREEMENT (GAP). Debt cancellation coverage is not required to obtain credit. I want to purchase a debt cancellation contract which is a part of this contract shown at line 1(K) above.

Company _____ Term _____ Months
Buyer X _____

SELLER ASSISTED LOAN. If YOU OBTAIN A LOAN, BUYER MAY BE REQUIRED TO PLEDGE SECURITY AND WILL BE OBLIGATED ON THE INSTALLMENT PAYMENTS ON BOTH THE SECURITY AGREEMENT AND THE LOAN.
Proceeds of Loan *
Amount is $ _____ Finance Charge $ _____
Payable in ___ Installments of $ _____
X _____ from this loan is described in (60) above.

Trade in Payoff - Seller used and relied upon information from you or below of your trade-in vehicle for the payoff amount in 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate. Seller agrees to pay the amount in 6B to the lienholder or lessor of the trade-in vehicle, or its assignee. If the payoff amount is more than the amount shown in 6B, you must pay the balance to us on demand. If the payoff amount is less than the amount shown in 6B, Seller will refund any surplus to you provided Seller(s)/borrows from the prior lienholder or lessor. Except as stated in the "Notice" on the back of this contract, you assume all the risk that any refund from the State.
X _____

COMPLAINT If you have a complaint concerning this sale, you should try to resolve it with the Seller. Complaints concerning written or deceptive practices or methods by the Seller may be referred to the City Attorney, the District Attorney, or an investigator for the Department of Motor Vehicles, or any committee thereof.
HOW THIS CONTRACT MAY BE CHANGED After this contract is signed, the Seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the Seller to make a unilateral change.

Buyer's Signature X _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN THE LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER, HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE LIENHOLDER BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER(S) AGREE TO ACKNOWLEDGE THAT THEY UNDERSTAND THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
Buyer X _____

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.
THERE IS NO COOLING OFF PERIOD UNLESS YOU SIGN A CONTRACT CANCELLATION OPTION
You are not required to sign a "cooling off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the Seller or for legal cause, such as fraud. However, California law does require a Seller to offer a two (2) day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle or an off-highway motor vehicle subject to identification under California Law. See the vehicle contract cancellation option agreement for details.

Buyer's Signature X _____    Co-Buyer's Signature X _____

A co-buyer is responsible for the payment of all monies due under this contract. An additional owner is listed on the title as an owner, but is not responsible for payment of the contract.

Additional Buyer: X _____
Additional Seller: SACRAMENTO LUXURY MOTORS  EXHIBIT "A"  Address    7801 FAIR OAKS BLVD CARMICHAEL CA, 95608

---

### NOTICE TO BUYER (right column)

NOTICES: The names and addresses of all persons to whom the notices required or permitted by law to be sent are set forth at the top of this form.

NOTICE: No person is required, as a condition of financing the purchase of a motor vehicle, to purchase or negotiate any insurance through a particular insurance company, agent or broker. ONLY PHYSICAL DAMAGE INSURANCE IS REQUIRED TO OBTAIN CREDIT.

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You have requested Seller to include in the balance due under this agreement the following insurance. Buyer requests Seller to procure insurance upon the described property against fire, theft, and collision for the term of this agreement. Any insurance will not be in force until accepted by the insurance carrier.

| | $ N/A | DED., COMP., FIRE & THEFT | | Premium N/A |
|---|---|---|---|---|
| | $ N/A | DEDUCTIBLE COLLISION | | N/A |
| BODILY INJURY $ | N/A | | | N/A |
| PROPERTY DAMAGE $ | N/A | | | N/A |
| MEDICAL | $ N/A | | Mos. | N/A |

TOTAL VEHICLE INSURANCE PREMIUMS
The foregoing declarations are hereby acknowledged.
X _____ SELLER
X _____ CO-BUYER

OPTIONAL CREDIT & DISABILITY INSURANCE AUTHORIZATION AND APPLICATION
You voluntarily request the credit insurance checked below, if any, and understand that such insurance is not required. You acknowledge disclosure of the cost of such insurance and authorize it to be included in the balance payable under the security agreement. Any returned or refunded credit insurance premiums shall be applied to the sums due under this contract. Only the persons whose names are signed below are insured.

| CREDIT LIFE | $ N/A | Mos. Premium $ N/A |
|---|---|---|
| JOINT LIFE | $ N/A | Mos. Premium $ N/A |
| CREDIT DISABILITY | $ N/A | Mos. Premium $ N/A |

TOTAL CREDIT INSURANCE PREMIUMS $ N/A
☐ You want Credit Life Insurance    ☐ You want Joint Credit Life Insurance
☐ You want Credit Disability Insurance (Primary Buyer Only)

You are applying for the credit insurance marked above. Your signature below means that you agree that (1) You are not eligible for insurance if you have reached your 60th birthday; (2) You are eligible for disability insurance only if you work full time or 30 hours or more each week; and (3) You are entitled to insurance only if you are eligible for disability insurance.

DISABILITY INSURANCE MAY NOT COVER CONDITIONS FROM WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (refer to Optional Disability No Coverage) in your policy or certificate for details.
By signing below, you agree to only credit insurance marked above.
DATE 11/27/2020    Primary Buyer X _____
DATE _____ AGE _____    Co-Buyer X _____

SERVICE CONTRACT (Optional) You request a service contract with the following company for the term below. The cost is shown on line 11 in Itemization of Amount Financed.

Company _____
Term _____ Mos. or _____ Miles

Company _____
Term _____ Mos. or _____ Miles

Company _____
Term _____ Mos. or _____ Miles

DISCLOSURE OF AUTO BROKER FEE
A BROKERAGE FEE ☐ was ☒ was not ☐ PAID
X _____

NOTICE OF RESCISSION RIGHTS If Buyer and Co-Buyer sign here the provisions of the rescission rights added on the back, giving the Buyer the right to rescind if Seller is unable to assign this contract to a financial institution, will apply.
Buyer's Signature X _____
Co-Buyer's Signature X _____

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulation may require a special Buyer's Guide to be displayed on the window.
BUYER'S GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.
GUIA DEL COMPRADOR DE AUTOS USADOS. LA INFORMACION QUE VE EN LA FORMA QUE SE ENCUENTRA EN LA VENTANA DE ESTE VEHICULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACION DE LA FORMA EN LA VENTANA CUALQUIER DISPOSICION QUE FUERA CONTRARIA AL CONTRATO DE VENTA.
WARRANTY - Each person signing as Guarantor, jointly and severally, guarantees to Seller, or any assignee of the Contract, payment of all sums when due under the Contract, a copy of which Guarantor acknowledges receiving. Guarantor agrees to pay on demand the full amount remaining unpaid if the Buyer(s) fails to pay any payment when it is due, or (2) breaks any of the agreements in the Contract. If Buyer shall default in the performance of the Contract, Guarantor shall keep and enforce the piece and about of Buyer. The Guarantor's liability under this Guaranty shall not be affected by any settlement or extension of the Contract, or by any change to the Buyer or the release of any other person, or by the release of the amount of the Contract, or by any change or alteration by consent of any of the parties to the amount or period of payment or terms of any other agreement between the Buyer and Seller. Guarantor waives notice to the following: (a) acceptance of this Guarantee; (b) presentment or nonperformance; and default; (c) amount owed and (d) any demand of the Buyer.
Guarantor X _____
Address _____  Date _____
Guarantor X _____
Address _____  Date _____

Arbitration: By signing below, you agree that pursuant to the Arbitration Clause on the back of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Clause for the additional information concerning the arbitration process, on/or/the Arbitration Clause on the reverse side of this form.
Buyer X _____
Co-Buyer X _____

---

BPI Custom Printing • Form #820-ARB (Rev. 7/17) © 2017 (Previously SA12-ARB) • (800) 336-9686 Nationwide • (800) 295-3316 Northern California • www.bpicustomprinting.com
The portion makes no warranty, expressed or implied, with respect to content or fitness for purchase of this form. Consult your legal counsel.

Page 2

LIENHOLDER-ORIGINAL

BUYER ACKNOWLEDGES THAT:
(1) BEFORE SIGNING THIS AGREEMENT BUYER READ BOTH SIDES OF THIS AGREEMENT AND RECEIVED A LEGIBLE, COMPLETELY FILLED IN COPY OF THIS AGREEMENT, AND
(2) BUYER HAS RECEIVED A COPY OF EVERY OTHER DOCUMENT THAT BUYER SIGNED DURING THE CONTRACT NEGOTIATION.
X _____  11/27/2020
Buyer's Signature X _____  Date

## ADDITIONAL TERMS AND CONDITIONS

**1. PROMISE TO PAY:** You promise to pay the down payment and Amount Financed, plus the finance charges on the Amount Financed, as shown in the Payment Schedule. The finance charges are to be computed daily on a simple interest basis by applying the Annual Percentage Rate to the unpaid portion of the Amount Financed until all sums due under this contract are fully paid. Payments will be applied first to interest, then to principal and to other amounts you owe in any order we choose.

**2. CAP:** There may be a gap between the amount you owe under this contract and the amount of your insurance settlement and deductible, in the event of theft or damage to your vehicle, YOU ARE LIABLE FOR THIS GAP AMOUNT. An optional gap (debt cancellation) contract for coverage of this gap amount may be offered for an additional charge.

**3. SIMPLE INTEREST CONTRACT:** The Finance Charge, Total of Payments and Payment Schedule shown may differ from the amount you will ultimately have to pay if your payments are received late or the Seller adds amounts to the amount you owe for any of the reasons stated below. For example, early payments would reduce your final payments, while late payments and additions to the amount you owe would increase it. Your final payment may also be different than the amount shown if the Seller figured the Payment Schedule assuming equal monthly payment periods and other factors which are permitted under the Truth in Lending Act. Your promise to pay requires you to pay the final payment on the due date even if it is different than the amount shown for any of these reasons. Seller may recover part of the Finance Charge.

**4. SECURITY INTEREST:** You hereby grant us a security interest under the California Uniform Commercial Code in the vehicle and all parts or accessories put on the vehicle and in all insurance premiums financed for you or rebates from insurance premiums, service contracts and in the proceeds of any insurance policies covering the vehicle or credit or disability insurance policies financed hereunder, which security interest secures all sums which may become due under this contract, as well as any modifications, extensions, renewals, amendments or re-financings of it.

**5. USE OF VEHICLE:** You agree to keep the vehicle free of all taxes and liens, except in favor of Seller, and not to use the vehicle, or permit the vehicle to be used illegally, improperly or for hire, or to expose the vehicle to misuse, seizure or confiscation; or other involuntary transfer, even if the vehicle was not the subject of judicial or administrative action. You agree not to make any material change in the vehicle or allow any material change in it to be made, or to remove the vehicle or allow it to be removed from this State for a period in excess of 30 days or transfer any interest in the vehicle. You agree to keep the vehicle in good working condition and make all necessary repairs. You agree not to remove the vehicle, nor permit its removal, from this country. Although we are not obligated to do so, if we elect to pay all liens, tiein or taxes in connection with the vehicle, or to expend any other amount to protect our interests in the vehicle, you will reimburse us, at our option, (i) within 5 days of our demand upon you to do so or (ii) we may add the dollar amount of any such liens, fees, taxes or other charges we pay to the balance of this contract, accruing finance charges, from the time we pay such amounts until the time you pay them to us, at the annual percentage rate shown on the face of this contract, with such dollar amount and finance charges due at maturity of this contract or in monthly installments due on the remaining payment dates shown on the face of this contract, as we might choose.

**6. INSURANCE:** You agree to keep the vehicle insured in favor of us with a policy satisfactory to us, with comprehensive fire, theft and collision coverage, insuring the vehicle in an amount sufficient to cover the value of the vehicle. You agree to deliver the policies to us, and you agree that we may (i) contact your insurance agent to verify coverage or to add us as loss payee or lienholder, (ii) make any claim under your insurance policy, (iii) cancel the insurance on your default, and (iv) receive any payment of loss or return premium, and apply the amounts received, at our option, to replacement of the property or to your indebtedness under this Agreement, including indebtedness not yet due. If you fail to maintain such insurance, we may, at our option, procure such insurance, and you agree to pay for such insurance and finance charges on the premiums at the annual percentage rate shown on the reverse, according to the notice we send you. You agree that any insurance we purchase may be for the protection of only our interest in the property, and may be for the remaining term of the contract or any shorter period as we determine. You understand that the insurance premium may be higher if we must purchase insurance than if you had purchased the insurance yourself. If insurance had been purchased in connection with this contract, any difference between the amounts shown in Statement of Insurance for premiums which may arise from errors in computation, classification, grouping or posting, or changes in the type of insurance shall be payable by you on demand. You agree that we can add any proceeds from insurance to either repair or replace the vehicle or to reduce your debt under this contract as we may decide. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed.

**7. DEFAULT:** If you breach any warranty or default in the performance in any promise you make in this agreement, including, but not limited to, making of any payment when due, or become insolvent, or file any proceeding under the U.S. Bankruptcy Code, or upon your demise, or if the vehicle is damaged, destroyed or impounded, we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable (2) file suit against you for all unpaid sums (3) take immediate possession of the motor vehicle (4) exercise any other legal or equitable remedy. If your vehicle has an electronic tracking device, you agree that we may use this device to find the vehicle. Upon taking possession of the motor vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to unpaid sums owing under this contract, including collection costs and attorney's fees. If there is any money left over (surplus) it will be paid to you. If a balance still remains owing, you promise to pay the same upon demand. If you default or breach this agreement you agree to pay finance charges at the annual percentage rate shown on the reverse side until all sums owing us are paid in full or judgment is entered. Our remedies are cumula-

tive and taking of any action shall not be a waiver or prohibit us from pursuing any other remedy. You agree that upon your default we shall be entitled to recover from you your reasonable collection costs, including, but not limited to, an attorney's fee. In addition, if we repossess your vehicle, you grant to us and our agents permission to enter upon any premises owned by you. You agree we are entitled to recover from you our reasonable costs and expenses of any repossession, including, but not limited to, any sums we pay third-party agents. With respect to any sums we are entitled to recover pursuant to the previous two sentences, you will reimburse us, at our option: (i) within 5 days of our demand upon you to do so or (ii) we may add the dollar amount of any such sums, costs and expenses to the balance of this contract, accruing finance charges, from the time we pay such amounts until the time you pay them to us, at the annual percentage rate shown on the face of this contract.

**8. BUYER'S WARRANTIES:** You certify that you have provided true, accurate and correct information and representations made with respect to this contract. You understand we have relied on the correctness of this information in agreeing to the terms of this contract and the sale of the vehicle. You certify you are the lawful owner of any vehicle trade-in identified herein, that the trade-in is free from all liens and encumbrances except those identified and, in the event that amount owed to satisfy any liens on the trade-in exceeds the amount identified by you, that excess shall be paid by you on demand.

**9. SELLER'S WARRANTIES:** SELLER DISCLAIMS ANY EXPRESS WARRANTIES OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS OR OTHERWISE CONCERNING THE VEHICLE, UNLESS SPECIFIED IN WRITING HEREIN, OR ON A SEPARATE WRITTEN AGREEMENT PROVIDED BY SELLER. SELLER ASSUMES NO LIABILITY FOR LOSS OF USE, DAMAGE, OR LOSS. Furthermore, seller disclaims any warranty or representation as to the accuracy of the mileage on the odometer. We do not warrant the correctness of the year of manufacture. You agree that you have verified the description of the vehicle to your satisfaction and that there is no warranty as to the correctness of the description of the vehicle.

**10. PREPAYMENT OF AMOUNT OWED:** You may prepay all amounts due under this contract at any time. In addition, if you fail to make any payment when due or perform any other agreement provided for in this contract, we may, in addition to other remedies, declare all sums immediately due and payable. If you prepay, a portion of your balance payment will be credited back to the finance charge and the balance to the unpaid Amount Financed. If you prepay in full you agree that we are entitled to a minimum finance charge as follows: (1) \$25, if the original Amount Financed does not exceed \$1,000, (2) \$50, if the original Amount Financed is more than \$1,000, but not more than \$2,000 or (3) \$75, if the original Amount Financed is more than \$2,000. Your obligation will be determined as applicable as of the date we are paid in full, or as of the date we recover the vehicle's value through its disposition, or upon entry of a court judgment for what you owe under this contract, or if we elect to keep the vehicle in satisfaction of what you owe under this contract, as of the date we take possession of the vehicle.

**11. DELAY OF ENFORCEMENT:** Any delay or enforcement of any of Seller's rights under this contract does not constitute waiver or loss of Seller's rights under this contract.

**12. POWER OF ATTORNEY:** You hereby appoint us, as well as any of our appropriate officers or other employees, as your attorney-in-fact, with full power of substitution, to sign in your name, place and stead any and all Certificates of Ownership, Registration Cards, applications, affidavits and/or any other documents required or necessary to transfer or convey any and all right, title and interest in and to the vehicle, to any person or persons, and to do and perform any and all other acts necessary or incident to the execution of the powers you hereby grant us, as fully and to all intents and purposes as you might or could do if personally present. This grant of a power of attorney being coupled with an interest, is irrevocable until all of your obligations under this contract are fully satisfied or until judgment is entered.

**13. OTHER AGREEMENTS:** (1) Seller may charge a \$15 fee for any check returned by a depository institution, (2) if the vehicle is repossessed, we may store personal property for your account at your expense as permitted by law. In the event such personal property is not claimed within 60 days after repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you. (3) If any payment is more than 10 days late, you will be charged 5% of the late amount. (4) You agree to allow us to inspect the vehicle at any reasonable time. (5) You agree to notify us of any change of address within 30 days, and make the provisions of Sections 1808.21 and 1808.22 of the Vehicle Code and authorize the Department of Motor Vehicles to furnish your address to the holder of this contract until it is paid in full. (6) We have the right to transfer this contract to an assignee and the assignee will have all our rights and remedies under this contract. (7) If any provision of this contract is held invalid, it does not mean that this contract is unenforceable, and the remaining provisions shall continue to be binding.

**14. NOTICE TO BUYER: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

### NOTICE (Federal Law)

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED THE AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### TELEPHONE MONITORING AND CALLING

I agree that you, your affiliates, agents, assigns and service providers may monitor and record telephone calls regarding my account to assure the quality of your service or for other reasons. I also expressly consent and agree to you, your affiliates, agents and service providers using written, electronic or verbal means to contact me. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, e-mails and/or automatic telephone dialing systems. I agree you, your affiliates, agents, assigns and service providers may do so using any e-mail address or telephone number I provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether I incur charges as a result.

### CREDIT APPROVAL, TERMS AND CONDITIONS (RESCISSION RIGHTS)

1. In order to verify information contained in the credit application, Buyer agrees to furnish Seller any necessary documents.
2. Buyer confirms it may take a few days for Seller to verify credit of Buyer and assign the contract. In consideration of Seller agreeing to deliver the vehicle, Buyer agrees Seller may rescind the contract if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business pursuant to terms of assignment acceptable to Seller.
3. In the event Seller chooses to rescind the contract, Seller shall give Buyer notice of the rescission within ten (10) days of the date of the contract. Such notice is considered given upon deposit of written notice in the United States mail directed to Buyer at the address of Buyer listed in the contract or in any other manner in which actual notice is given to Buyer. After receiving such notice, Buyer shall immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted, and the contract shall then be deemed rescinded. After withdrawal of the contract, Seller agrees to give back to Buyer all consideration received in connection with the contract, including any trade-in vehicle.
4. Upon notice of Seller's election to rescind the contract, in the event the vehicle is not immediately returned to the Seller, Buyer shall be liable to Seller for all expenses incurred by Seller in acquiring possession of the vehicle. This excludes attorney's fees. Seller shall have the right to repossess the vehicle with the right of entry wherever the vehicle may be found.
5. All terms of the contract, including those relating to use of and insurance for the vehicle, while it is in possession of Buyer, shall be in full force and all risk of loss or damage to the vehicle shall be assumed by Buyer who shall pay all reasonable repair costs related to any damage done to the vehicle while in the possession or control of Buyer until the vehicle is returned to Seller.

_If you have purchased credit disability insurance in connection with this transaction, the following claim procedures apply:_

### CLAIM PROCEDURE

If you become disabled, tell us (your creditor) right away. (We advise you to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us at the location where we would like to be notified.) We will tell you where to get claim forms. Send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your first missed payment, WE CANNOT TRY TO COLLECT ANY OF YOUR ONE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you miss three monthly due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within three calendar months or accepts the claim within three calendar months as a partial disability and pays less than a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between past due payments and what the insurance company pays for the partial disability, plus late charges. On contract, we will tell you what late time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send those completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

### ARBITRATION CLAUSE

**PLEASE READ CAREFULLY. THIS CLAUSE AFFECTS YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE.**

UNDER THIS CLAUSE, EITHER YOU OR WE MAY ELECT TO HAVE ANY DISPUTE THAT ARISES BETWEEN US TO BE DECIDED BY THE ARBITRATION PROCESS, NOT IN COURT OR BY A JURY TRIAL. THERE ARE LIMITS TO APPEAL AND OTHER RIGHTS THAT YOU AND WE MAY HAVE IN A COURT PROCESS THAT ARE NOT AVAILABLE IN THE ARBITRATION PROCESS.

IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

Rights to an appeal and discovery in arbitration may be more limited than in a lawsuit. Other rights that you and we would have in court may not be available in arbitration. Any claim or dispute, whether based in contract, tort, statute or other, including the interpretation of this clause or the arbitrability of any dispute, between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this contract, the purchase or condition of this vehicle or any resulting or related document, transaction or relationship, including any such relationship to third parties who are not signatories to this contract, shall at your or our election, be resolved by neutral, binding arbitration. You expressly waive any right you may have to arbitrate a class action. You may choose a local chapter of the American Arbitration Association (www.adr.org) or any arbitration organization subject to our approval. Arbitration organizations will provide you with a copy of the rules for the selection of the arbitrator and for the arbitration process.

The arbitrator shall be an attorney or a retired judge trained in the arbitration process and rules. The arbitrator shall apply the governing substantive law and the applicable statute of limitations in making a decision and an award. The arbitration shall be conducted in the federal district in which you reside, or, if the creditor-seller is a party, then the arbitration will be conducted in the federal district where this contract was executed.You and we will pay the filing, administration, service or case management fees and the arbitrator or hearing fee in accordance with the rules and procedures of the chosen arbitration organization. If the rules of the chosen arbitration organization do not specify how fees shall be allocated, we will pay the filing, administration, service or case management fee and the arbitrator or hearing fee up to a maximum of \$5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other related fees, unless the arbitrator shall award payment of these fees, if the chosen arbitration organization's rules conflict with this clause, then this clause's provisions shall control. This arbitration award shall be final and binding and not appealable on all parties, subject to limited rights to appeal under the Federal Arbitration Act. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. Section 1 et seq.) and not by any state law concerning arbitration. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, filing an action to recover the vehicle, to recover a deficiency balance or for individual injunctive relief.

You and we retain the right to seek remedies in small claims court for claims or disputes within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit in court. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, cancellation, payoff or transfer of this contract. If any part of this arbitration clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause will then be unenforceable.

### ASSIGNMENT

Seller assigns its interest in this contract to: _____

| Assignee | Address |
|---|---|

☐ Assigned without recourse
☐ Assigned without recourse
☑ Assigned with limited recourse

| Seller | By | Title |
|---|---|---|

### NOTICE OF ASSIGNMENT COPY SENT

| DATE SENT | SIGNED BY |
|---|---|

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com



# CIG Financial

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | REDACTED | **Financed Date** | 11/27/2020 |
| **Loan Number** | REDACTED | **Perfected Date** | 1/14/2021 |
| **Branch** | | **Payoff Date** | |
| | | | |
| **Borrower 1** | LARRY BUTLER | **Dealer ID** | REDACTED |
| **Borrower 2** | | **Dealer** | SACRAMENTO LUXURY MOTORS |
| **Borrower Address** | 8159 SUN TREE LN FAIR OAKS, CA 95628-2514 | **Dealer Address** | 3071 SUNRISE BLVD RANCHO CORDOVA, CA 95742 |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | N94 |
| **Lienholder** | CIG FINANCIAL |
| **Lienholder Address** | PO BX 19795 IRVINE, CA 92623 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 4JGDA5HB5HA976701 | **Issuance Date** | 1/8/2021 |
| **Title Number** | | **Received Date** | 1/14/2021 |
| **Title State** | CA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2017 | **Odometer Reading** | 48349 11/27/2020 |
| **Make** | MERZ | **Branding** | |
| **Model** | | | |
| | | | |
| **Owner 1** | BUTLER LARRY D JR | | |
| **Owner 2** | | | |
| **Owner Address** | 8159 SUN TREE LN FAIR OAKS, CA 95628 | | |

---

**Printed:** Tuesday, April 18, 2023 3:00:23 PM PST

EXHIBIT "B"

**J.D. POWER**

J.D. POWER Used Cars/Trucks

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | **2017 Mercedes-Benz GLE Utility 4D GLE350 AWD 3.5L V6** |
| **Region:** | **Eastern** |
| **Period:** | **April 27, 2023** |
| **VIN:** | **4JGDA5HB5HA976701** |
| **Mileage:** | **82,500** |
| **Base MSRP:** | **$54,500** |
| **Typically Equipped MSRP:** | **$65,285** |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly** | | | | |
| **Trade-In** | | | | |
| Rough | $22,100 | N/A | -$975 | **$21,125** |
| Average | $24,300 | N/A | -$975 | **$23,325** |
| Clean | $26,150 | N/A | -$975 | **$25,175** |
| Clean Loan | $23,550 | N/A | -$975 | **$22,575** |
| Clean Retail | $29,900 | N/A | -$1,100 | **$28,800** |
| **Weekly** | | | | |
| **Auction** | | | | |
| Low | $19,850 | $272 | N/A | **$20,122** |
| Average | $23,000 | $272 | N/A | **$23,272** |
| High | $26,175 | $272 | N/A | **$26,447** |
| **Trade-In** | | | | |
| Rough | $22,125 | N/A | -$975 | **$21,150** |
| Average | $24,325 | N/A | -$975 | **$23,350** |
| Clean | $26,175 | N/A | -$975 | **$25,200** |
| Clean Loan | $23,575 | N/A | -$975 | **$22,600** |
| Clean Retail | $29,925 | N/A | -$1,100 | **$28,825** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

EXHIBIT "C"

Page 5